UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JAN M. GAWLIK,<br>Plaintiff, | :<br>:<br>: |
| v. | :     Case No. 3:23-CV-1194 (OAW) |
| JENNIFER REIS, et al.,<br>Defendants. | :<br>:<br>: |

## INITIAL REVIEW ORDER

Self-represented Plaintiff Jan M. Gawlik has filed an amended complaint[1] bringing civil rights claims against seven defendants: Warden Jennifer Reis, Commissioner Angel Quiros, District Administrator Nick Rodriguez, Acting District Administrator D. Long, Acting Warden/Deputy Warden Carlos Nunez, Staff Attorney III Nancy K. O'Brasky, and Victim Services Officer Ebonie Suggs. He alleges that they have violated rights guaranteed to him through: the First, Fourth, Fifth, Eighth,[2] and Fourteenth Amendments;[3] 42 U.S.C. §§ 1985 and 1986; the Americans with Disabilities Act ("ADA") as well as Section 504 of the Rehabilitation Act ("RA"); the Supremacy Clause; the "Nelson Mandela Act;" 18 U.S.C. §§ 245 and 249; and Connecticut law.

---

[1] Plaintiff initially filed this action to assert claims on behalf of his mother. *See* ECF No. 1. The court dismissed those claims because, as a self-represented litigant, Plaintiff cannot assert claims on behalf of another person, but the dismissal was without prejudice to Plaintiff amending the complaint in order to assert his own claims. See ECF No. 12.
[2] Plaintiff also states a "deliberate indifference" claim, which the court construes as coterminous with the Eighth Amendment claim.
[3] The court interprets all constitutional claims as proceeding under 42 U.S.C. § 1983.

Basically, Mr. Gawlik sought in-person visits with his octogenarian birth mother, who had Alzheimer's and who previously had been the protected party listed in an order issued against Plaintiff due to his 2011 arrest on allegations he denies. Though a standing criminal protective order remained in place, it did not extent to protect Plaintiff's mother, and the order for her protection terminated on January 9, 2015, presumably when Plaintiff was convicted of murder. *See* Department of Correction website, available at: http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=138888 (last visited March 6, 2025). Despite being informed of the termination of the relevant protective order, Plaintiff was denied in-person visits with his mother. Sadly, and for this the court extends its condolences, Plaintiff's mother has since passed away. *See* ECF No. 17.

The Prison Litigation Reform Act requires federal courts to review complaints brought by prisoners seeking relief against a government entity, or against an officer or employee of a government entity. 28 U.S.C. § 1915A(a). Upon review, the court must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915(e)(2)(b), 1915A(b). Consistent with statute, the court carefully has reviewed all factual allegations in the amended complaint and has conducted an initial review. Upon such review, the court hereby finds that all of Plaintiff's claims must be dismissed except for his First Amendment retaliation claim against Defendants Reis and Suggs in their individual capacities. The court so rules for the reasons which follow.

## I.   **FACTUAL BACKGROUND**

The court does not set forth all of the allegations in Plaintiff's amended complaint,[4] but the essential facts are these: over a decade ago, Plaintiff was arrested on unspecified charges and a protective order was entered preventing him from having contact with his mother, although his mother did not want the protective order. ECF No. 16 ¶ 15–16. The protective order was terminated on February 18, 2015. *Id.* ¶ 16. Plaintiff was in state custody at the time, but his attorney notified the Department of Correction that the protective order had been terminated. *Id.* ¶¶ 18–19.

Plaintiff is incarcerated at Cheshire Correctional Institution, *id.* ¶ 4, and when he filed his amended complaint, his mother was eighty-four years old, infirm, and suffering from Alzheimer's disease, *id.* ¶ 43; they shared a deep religious bond. ECF No. 16 ¶ 25.

For several years before her passing, Plaintiff and his mother had been trying to have a contact visit, but with no success. On December 26, 2022, Mrs. Gawlik submitted a visitor application to Defendant Reis, which Defendant Suggs denied about one month later, noting that Mrs. Gawlik was a prior victim of Plaintiff's. *Id.* ¶ 46–48. Defendant Reis sent a letter to Mrs. Gawlik informing her of the denial. *Id.* ¶ 55–56. On January 31, 2023, Plaintiff submitted an inmate request to Defendant Reis asking her to reconsider the

---

[4] Plaintiff has filed a ninety-four-page document comprised of a thirty-eight-page amended complaint and fifty-six pages of exhibits. Plaintiff's factual allegations comprise 110 paragraphs, which include conclusory statements, repetition, case citations, quotation of letters and grievances, and legal argument. Plaintiff fails to comply with the requirements of Federal Rule of Civil Procedure 8 which requires that a complaint be "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). *See Cunningham v. Lupis*, No. 3:21cv273(SALM), 2022 WL 561352, at *2 (D. Conn. Feb. 24, 2022) (noting that inclusion of argument and case citations in complaint "make the proposed Amended Complaint a prime candidate for dismissal pursuant to Rule 8"). While the court does not dismiss this case for failure to comply with Rule 8, Plaintiff is on notice that he must do so in the future.

denial of his mother's visitor application, speculating that the denial was retaliation for his prior litigation. Plaintiff did not receive a timely response to the inmate request, so, on February 14, 2023, he filed a grievance. *Id.* ¶ 64. Defendant Nunez denied the grievance, stating that the visit request letter was unverified and written by a third party. *Id.* ¶ 70. Plaintiff's appeal of that decision was denied by Defendants Rodriguez and Long. *Id.* ¶¶ 82–84. On June 2, 2023, Plaintiff sent a letter to Defendant Quiros seeking contact visits with his mother. *Id.* ¶ 87. Defendant O'Brasky responded that Mrs. Gawlik's request properly had been denied and that she had received due process. *Id.* ¶ 88. Plaintiff disagrees. *Id.* ¶¶ 89–95, 98.

## II.   DISCUSSION

The court first addresses the claims which summarily can be dismissed.[5]

### A.  ADA and Section 504

Plaintiff states that he is disabled, and that Defendants discriminated against him in violation of the ADA and the RA.[6] Because the statutes have identical standards, courts treat claims under ADA and Section 504 identically.[7] *See Henrietta D. v. Bloomberg*, 331

---

[5] Plaintiff hereby is on notice that listing a statute or constitutional provision is not sufficient to state a claim for relief under that statute or provision. *See, e.g., Monger v. Connecticut Dep't of Transp.*, No. 3:17CV00205(JCH), 2017 WL 3996393, at *5 (D. Conn. Sept. 11, 2017) ("Merely mentioning the state constitution, however, is not sufficient to state a claim upon which relief can be based."). While the court addresses all of Plaintiff's claims in this order, it will not continue to do so if Plaintiff fails to comply with this instruction in future filings.

[6] He also cites 42 U.S.C. § 12202, presumably for the proposition that the state is not immune from suit under the ADA. *See* 42 U.S.C. § 12202 ("A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court ... for a violation of this chapter."). This does not appear to be an independent claim, however.

[7] The only difference between the ADA and RA is that the RA applies to entities receiving federal financial

F.3d 261, 272 (2d Cir. 2003). To state a cognizable claim under either the ADA or the RA, Plaintiff must allege facts establishing three factors: (1) that he is a qualified person with a disability, (2) that defendants are considered an entity subject to the statute, and (3) that he was denied the opportunity to participate in or benefit from an institutional program, service, or activity, or otherwise discriminated against because of his disabilities. *Wright v. New York State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016).

In conclusory fashion, Plaintiff alleges he is a qualified individual with a disability. All his asserted facts allege retaliation for litigation against correctional staff, not because of his disability. Therefore, he cannot state a cognizable claim under either the ADA or the RA. Without allegations to support such claims, they fail to pass initial review. Accordingly, all such claims are dismissed.

### B. Federal Criminal Statutes

Plaintiff alleges Defendants violated two federal criminal statutes: 18 U.S.C. §§ 249 and 245. Violations of Title 18 cannot serve as the basis for a civil cause of action unless the specific statute includes an express or implied private right of action. *Guttilla v. City of New York*, No. 14-CV-156(JPO), 2015 WL 437405, at *11 (S.D.N.Y. Feb. 3, 2015) (citing *Cort v. Ash*, 422 U.S. 66, 79 (1975)). Sections 249 and 245 do not include such language*. See Ates v. United States*, No. 20-CV-4334(JS)(AYS), 2020 WL 6202672, at *4 (E.D.N.Y. Oct. 22, 2020) (collecting cases and concluding that 18 U.S.C.

---

assistance while the ADA applies to all public entities, a distinction not relevant here. *See Messier v. Southbury Training Sch.*, 562 F. Supp. 2d 294, 320 & n.13 (D. Conn. 2008).

§§ 241, 245, and 249 "are criminal statutes and do not provide a private right of action."). Accordingly, any claims brought under 18 U.S.C. §§ 245 and 249 must be dismissed.

### C. 42 U.S.C. §§ 1985 and 1986

Plaintiff asserts claims under Sections 1985 and 1986 . But Section 1985 prohibits conspiracies only in specific contexts: subparagraph (1) prohibits conspiracies to prevent federal officers from performing their duties; subparagraph (2) prohibits them to deter witnesses from participating in state or federal judicial proceedings; and subparagraph (3) prohibits conspiracies motivated by racial or otherwise class-based invidious discriminatory animus. *See Harnage v. Dzurenda*, No. 3:14-cv-885(SRU), 2014 WL 3360342, at *2 (D. Conn. July 9, 2014). Neither of the first two provisions is applicable to the present facts, and Plaintiff does not allege any class-based discrimination. Instead, he alleges that Defendants' actions were retaliation for his lawsuits against prison staff. Thus, Plaintiff fails to state a plausible Section 1985 claim.

Section 1986 provides no substantive rights; it merely provides a remedy for the violation of Section 1985. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 222 n.28 (1970) (Brennan, J., concurring in part and dissenting in part). Thus, a prerequisite for a Section 1986 claim is a cognizable Section 1985 claim. *See Brown v. City of Oneonta*, 221 F.3d 329, 341 (2d Cir. 2000), *overruled in part on other grounds by Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002). As Plaintiff has not stated a plausible Section 1985 claim, he cannot state a cognizable Section 1986 claim. Thus, these claims also are dismissed.

### D. Supremacy Clause

Plaintiff alleges Defendants have violated his rights under the Supremacy Clause, which invalidates state laws that "interfere with, or are contrary to," federal law. *Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1, 211 (1824). Plaintiff has not identified any state law or regulation that is preempted by federal law. Thus, any Supremacy claim is dismissed.

### E. Mandela Act

Plaintiff includes the "Mandela Act" in his list of claims but does not mention it in his statement of facts. The court presumes Plaintiff refers to the United Nations Standard Minimum Rules for Treatment of Prisoners (also known as the Nelson Mandela rules). But these rules are not a source of justiciable rights. *Wainwright v. Medical Dep't Cuyahoga Cnty. Corr. Ctr.*, No. 1:17-CV-1621, 2018 WL 2077507, at *3 n.41 (N.D. Ohio May 4, 2018) (citing *Serra v. Lappin*, 600 F.3d 1191, 1197 (9th Cir. 2010). Thus, any claims based on their violation are not plausible and must be dismissed.

### F. Fourth Amendment

Plaintiff mentions the Fourth Amendment right to privacy in his introductory statement of his claims but alleges no facts supporting this claim. In the prison context, the Fourth Amendment affords inmates a limited right to bodily privacy. *See Harris v. Miller*, 818 F.3d 49. 57 (2d Cir. 2016) ("While acknowledging that 'the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell' we held more than twenty years ago 'that maintenance of prison security is not burdened unduly by the recognition that inmates do retain a limited right to bodily privacy'" (internal citations omitted)). As Plaintiff alleges no facts suggesting that his right

7

to bodily privacy was violated, he fails to state a plausible Fourth Amendment claim. Any Fourth Amendment claim is dismissed.

### G. First Amendment Claims

Plaintiff asserts three violations of his First Amendment rights: denial of his right to free exercise of religion, denial of his right to freely associate, and retaliation for exercising his First Amendment rights. The court takes each in turn.

#### 1. *Free Exercise*

Plaintiff contends the defendants violated his First Amendment right to freely practice his religion by denying contact visits that would have enabled him to pray with his mother.

The Free Exercise Clause requires that government officials respect, and avoid interference with, the religious beliefs and practices of the people. *See Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005). Prisoners "retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause." *Kravitz v. Purcell*, 87 F.4th 111, 127 (2d Cir. 2023) (quoting *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003) (internal quotation marks omitted). Prisoners' constitutional rights, however, are balanced against legitimate penological objectives. *Id.* Therefore, "infringement of the free exercise of religion is permissible only if it is 'reasonably related to legitimate penological interests.'" *Id.* at 128 (quoting *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir. 1990)). To state a First Amendment free exercise claim under section 1983, a prisoner must allege facts showing (1) "the practice asserted is religious in the person's scheme of beliefs" and "the belief is sincerely held," (2) "the challenged practice

of the prison officials infringes upon the religious belief," and (3) the challenged practice does not further "legitimate penological objective[s]." *Id.* (quoting *Farid v. Smith,* 850 F.2d 917, 926 (2d Cir. 1988)) (internal quotation marks omitted).

The court accepts that Plaintiff's religious beliefs are sincerely held, but questions whether praying with another person, particularly where that person is not a religious leader, constitutes a religious practice within the meaning of *Kravitz*. Moreover, it is not clear why contact visits are necessary to effect that practice. But even accepting that Plaintiff has satisfied the first two elements of the *Kravitz* test, he has not satisfied the third. Plaintiff alleges that prison officials denied Mrs. Gawlik's request because she was a victim of Plaintiff's and because there was no verification that Mrs. Gawlik was freely requesting contact visits. These reasons reflect the legitimate penological objectives of ensuring the safety and security of the facility and the public. Thus, any purported interference with Plaintiff's free exercise of religion is permissible. The First Amendment Free Exercise claim therefore is dismissed.

    2. ***Free Association***

Plaintiff also contends that the denial of contact visits violates his First Amendment right to freedom of association. As a prisoner, Plaintiff "does not retain rights inconsistent with proper incarceration," and "freedom of association is among the rights least compatible with incarceration." *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003). While it still is unsettled whether inmates have a right to visitation, the Supreme Court of the United States has held that any such right may be curtailed via regulations that are rationally related to a legitimate penological interest. *Id.* at 131–32 (noting that while there

9

is "a right to maintain certain familial relationships, including association among members of an immediate family" outside the prison context, "[s]ome curtailment of that freedom must be expected in the prison context"); *accord Malave v. Weir*, No. 3:16-cv-00009(JAM), 2018 WL 500644, at *6 (D. Conn. Jan. 22, 2018) (noting the United States Court of Appeals for the Second Circuit has not recognized a right to visitation or telephone contact between married persons where one person is incarcerated). In determining whether a rational basis supports a restriction on visitation, the court "must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Id.* at 132.

As discussed above, prison officials have a legitimate penological interest in securing the safety of the public and the facility, which interest justifies denying visits to former victims. Further, it does not appear that Plaintiff completely was prevented from contact with his mother; apparently he could speak to her on the phone, write her letters, and even have no-contact visits. *See Hernandez v. McGinnis*, 272 F. Supp. 2d 223, 228 (W.D.N.Y. 2003) (holding that visiting restrictions were constitutional where inmate was not denied all avenues of communication). Thus, Plaintiff has not alleged a plausible claim for denial of freedom of association, and it, too, is dismissed.

3. ***Retaliation***

Plaintiff also alleges that all defendants acted in retaliation because he has filed lawsuits against correctional staff. To state a cognizable retaliation claim, Plaintiff must allege facts establishing three elements: "(1) that the speech or conduct at issue was

protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Burns v. Martuscello*, 890 F.3d 77, 84 (2d Cir. 2018) (quoting *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015)) (internal quotation marks omitted). Plaintiff's allegations must be non-conclusory. *See Friedl v. City of New York*, 210 F.3d 79, 86 (2d Cir. 2000) (noting that a retaliation claim may not be stated in conclusory terms, but instead must be supported by specific factual allegations).

Filing a lawsuit is a protected activity. *See Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (finding that filing a lawsuit or grievance is constitutionally protected activity and will support a retaliation claim). Thus, Plaintiff meets the first element.

Regarding the second element, the adverse action must be serious enough to deter a similarly situated person of ordinary firmness from exercising his right to speech. *Burns*, 890 F.3d at 93–94. Plaintiff alleges that the defendants denied his mother's request for contact visits, thereby preventing him from being able to pray and associate with her. For purposes of initial review only, the court assumes that Plaintiff sufficiently alleged that he suffered an adverse action.

The third element requires Plaintiff to allege facts showing a causal connection between the adverse action and his protected activity. While the court may not "invent factual allegations" that the plaintiff has not pleaded, it is well-settled that pleadings of self-represented litigants must be construed generously. *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010). And, as the undersigned currently presides over all Plaintiff's several pending federal lawsuits, it is appropriate to take judicial notice of the fact that

11

Plaintiff has filed suit against several of these defendants in 5 civil actions over the past several years, throughout the period when his requests for contact visits were rejected.[8] The volume and recency of this litigation is sufficient to show causation for purposes of initial review, though the court does not ignore the reality that a litigious inmate could be rewarded for their filing a flurry of even frivolous lawsuits by thus increasing the likelihood that a court might be able to make such a finding. Nevertheless, with some reservation, the court allows this limited First Amendment retaliation claim to proceed.

However, there are insufficient facts to state a retaliation claim against all the named defendants. The only defendants alleged to have had a role in the denial of contact visits are Defendants Reis and Suggs. Defendant Suggs apparently signed the request form with the denial, and Defendant Reis sent Mrs. Gawlik a letter informing her of the denial. No other defendant's conduct can support a retaliation claim against them.

Defendants Quiros, Rodriguez, Long, and Nunez are supervisory officials. The Second Circuit has held that "there is no special rule for supervisory liability," and that "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). Thus, the fact that these defendants have some measure of authority within Cheshire is insufficient to carry the retaliation claim against them.

---

[8] *Gawlik v. Strom et al*, case no. 3:21-cv-743 (filed May 28, 2021); *Gawlik v. Quiros et al*, case no. 3:21-cv-1549 (filed November 22, 2021); *Gawlik v. Quiros et al*, case no. 3:23-cv-772 (filed June 14, 2023); *Gawlik v. Borchet et al,* case no. 3:24-cv-692 (filed April 12, 2024).

And while Plaintiff also alleges that Defendants Nunez, Rodriguez, and Long denied his grievance and his appeal thereof, this, too, is insufficient to support a retaliation claim against them. Even before *Tangreti*, "the Second Circuit noted that it is 'questionable whether an adjudicator's rejection of an administrative grievance would make him liable for the conduct complained of.'" *Rooks v. Santiago*, No. 3:20-cv-299(MPS), 2021 WL 2206600, at *3 (D. Conn. June 1, 2021) (quoting *McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004)). Since *Tangreti*, district courts have held that review of a grievance or disciplinary appeal is insufficient to establish the reviewer's personal involvement in claims relating to the underlying proceeding. *See Rooks*, 2021 WL 2206600, at *3 (concluding that allegations that the district administrator denied appeals was insufficient to show his personal involvement in alleged Fourteenth Amendment violation); *Brown v. Annucci*, No. 19cv9048(VB), 2021 WL 860189, at *9 (S.D.N.Y. Mar. 8, 2021) (finding the denial of a disciplinary appeal insufficient to establish personal involvement); *Brown v. Department of Corr.*, No. 3:16-cv-376(WIG), 2021 WL 124417, at *11 (D. Conn. Jan. 12, 2021) (finding that the pro forma denial of a grievance appeal does not establish personal involvement). Further, "[i]nmates have no constitutional entitlement to grievance procedures, to receive a response to a grievance, or to have a grievance properly processed." *Schlosser v. Manuel*, No. 3:19-cv-1444(SRU), 2020 WL 127700, at *5 (D. Conn. Jan. 10, 2020). Thus, all claims against defendants Rodriguez, Long, and Nunez are dismissed.

Plaintiff alleges that he wrote a letter to Defendant Quiros, but that Defendant O'Brasky responded to the letter. The claims do not show that Defendant Quiros ever

13

saw the request or that he specifically directed any particular response. At most, they show that someone in the Commissioner's office referred the letter to Defendant O'Brasky for a response. This is insufficient to show his personal involvement in Plaintiff's claims. *See Delee v. Hannigan*, 729 F. App'x 25, 32 (2d Cir. 2018) (affirming dismissal of supervisory liability claim based on failure to respond to letter); *see also Young v. Choinski*, 15 F. Supp. 3d 172, 190 (D. Conn. 2014) (failure of prison official to respond to inmate's request insufficient to show personal involvement in Eighth Amendment claim). Moreover, Defendant O'Brasky's response to the letter is tantamount to an additional level of appeal, which, as discussed supra, is insufficient to carry a retaliation claim. Thus, the retaliation claim cannot be stated against Defendant Quiros or Defendant O'Brasky.

## H. Fourteenth Amendment Claims

Plaintiff also asserts both due process[9] and equal protection claims under the Fourteenth Amendment.

### 1. Due Process

Plaintiff contends that the denial of Mrs. Gawlik's visitor application violated his right to due process. As the court previously held, Plaintiff, as a self-represented litigant, cannot assert claims on behalf of any other person. *See* ECF No. 12. Accordingly, any claims that Mrs. Gawlik was denied procedural or substantive due process regarding the denial of her visitor application are dismissed.

---

[9] Plaintiff also cites to Fifth Amendment due process, but the Fifth Amendment Due Process Clause applies to federal, not state, inmates. *Jackson v. Walker*, No. 3:22-CV-1951(OAW), 2022 WL 16573562, at *3 (D. Conn. Nov. 1, 2022) (citing *Caiozzo v. Koreman*, 581 F.3d 63, 69 & n.3 (2d Cir. 2009). Plaintiff, a state inmate, cannot plausibly assert a Fifth Amendment Claim. Any such claim must be dismissed.

To the extent Plaintiff asserts that his own due process rights were violated, the court finds that he has failed to carry any such claim. First, Supreme Court jurisprudence is clear that it is inappropriate to apply a substantive due process analysis where a particular right is clearly defined elsewhere in the Constitution. *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 842, (1998) (stating that "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.") (quoting *Albright v. Oliver*, 510 U.S. 266, 273, (1994)) (internal quotation marks omitted) (alteration in original). As visitation rights are covered directly by the First Amendment's Free Association Clause, Plaintiff may not apply the substantive due process paradigm. And as the court already has addressed the free association argument supra, the court need not do so again here.

With respect to Plaintiff's procedural due process rights, first, he must show that he has a liberty interest in contact visits during his incarceration. But it is clear that the "denial of prison access to a particular visitor 'is well within the terms of confinement ordinarily contemplated by a prison sentence,'" and therefore Plaintiff has no constitutional liberty interest in contact visits with his mother. *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 461 (1989). And while state laws and policies can create a protectable liberty interest, there is no such state law or policy here. Plaintiff cites to Section 18-81gg of the General Statutes of Connecticut as evidence that he was entitled to a hearing before the denial of his request for a contact visit, but that statute specifically covers visits from minor children, and thus is inapposite. *See* Conn. Gen. Stat. § 18-81gg

15

("The Commissioner of Correction shall establish visitation policies for any inmate who is a parent to a child under the age of eighteen."). Plaintiff also cites Executive Order 21-1 and the "Protect Act," Public Act 22-18, which was effective July 1, 2022, as sources of an entitlement to visitation, but these also do not include the provisions Plaintiff claims. In the first instance, it is not clear that either authority provides a private cause of action. Moreover, while Executive Order 21-1 anticipates greater access to contact visits, it does not mandate them.[10] For its part, Public Act 22-18 does not address contact visits.[11] Thus, neither authority creates a liberty interest in visitation.

Furthermore, the court has found no other state authority that plausibly gives rise to a liberty interest in visitation. In fact, Connecticut courts addressing the issue have concluded that there is no state-created liberty interest in visitation. *See, e.g., Sosa v. CT Dep't of Corr.*, No. CV145016124S, 2015 WL 6764053, at *6 (Conn. Super. Ct. Oct. 8, 2015) (*Hon. Marcia A. Gleeson, J.*), aff'd in part, appeal dismissed in part sub nom. *Sosa v. Comm'r of Correction*, 175 Conn. App. 831, 169 A.3d 341 (2017) (relying on administrative directives that explicitly define visitation as a privilege, not an entitlement).

Accordingly, there is no liberty interest in contact visits which is protected by the Fourteenth Amendment, and any due process claims are dismissed.

---

[10] Conn. Exec. Order No. 21-1 § 6 (2021), *available at* https://portal.ct.gov/-/media/office-of-the-governor/executive-orders/lamont-executive-orders/executive-order-no-21-1.pdf (last visited Mar. 6, 2025) ("By October 1, 2021, the Department of Correction shall report on steps taken and to be taken to increase access to contact visits for incarcerated persons.").

[11] Public Act No. 22-18, *available at* https://www.cga.ct.gov/searchresults.asp?q=22-18#gsc.tab=0&gsc.q=22-18&gsc.page=1 (last visited Mar. 6, 2025).

### 2. **Equal Protection**

Plaintiff repeatedly references the Equal Protection Clause with little discussion or analysis. Nevertheless, the court will determine whether the amended complaint sufficiently states an equal protection claim.

To state an equal protection claim, Plaintiff must allege facts showing that he was treated differently from similarly-situated inmates, and that the difference in treatment was based on "'impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious bad faith intent to injure a person.'" *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980)); *see also Bizzarro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005) (stating that the Equal Protection Clause "bars the government from selective adverse treatment of individuals compared with other similarly situated individuals if 'such selective treatment base based on impermissible considerations....'"). Plaintiff fails to identity any class protected under the Fourteenth Amendment or any similarly-situated persons who were treated differently than he was with respect to his request for a contact visit with a blood relative. Thus, Plaintiff fails to state a plausible equal protection claim and this claim therefore is dismissed.

### I. **Eighth Amendment**

Plaintiff references (again without argument) the Eighth Amendment's prohibition against cruel and unusual punishment. "A plaintiff asserting an Eighth Amendment claim pursuant to 42 U.S.C. § 1983 must meet two requirements. First, the alleged deprivation must be, in objective terms, sufficiently serious. Second, the charged official must act with

17

a sufficiently culpable state of mind." *Hurd v. Fredenburgh*, 984 F.3d 1075, 1084 (2d Cir. 2021) (quoting *Francis v. Fiacco*, 942 F.3d 126, 150 (2d Cir. 2019)) (internal quotation marks omitted). "To prevail on a claim based on the conditions of his confinement, a prisoner must show 'extreme deprivations,' '[b]ecause routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Sims v. Artuz*, 230 F.3d 14, 21 (2d Cir. 2000) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (alteration in original); *see also Blyden v. Mancusi*, 186 F.3d at 263 ("Because society does not expect or intend prison conditions to be comfortable, only extreme deprivations are sufficient to sustain a 'conditions-of-confinement' claim.").

Even assuming Plaintiff has alleged a sufficiently culpable state of mind insofar as he has claimed that the denial of his request for a contact visit was retaliation for his litigiousness, the court cannot find that he has satisfied the objective element. While the court has no doubt that being unable to have contact visits with his mother rendered "confinement more difficult to bear," the deprivation is "not a dramatic departure from accepted standards for conditions of confinement." *Overton*, 539 U.S. at 137. It does not "create inhumane prison conditions, deprive [Plaintiff] of basic necessities, or fail to protect [his] health or safety," nor does it cause physical pain or injury, or even exhibit deliberate indifference to the risk that such pain or injury might occur. *Id.*

Accordingly, the court must dismiss any Eighth Amendment claim as implausible.

### J. State Law Claims

Plaintiff contends that Defendants violated the same state laws which the court already has discussed in connection with Plaintiff's Fourteenth Amendment claims. As

noted earlier, none of these laws provides the rights which Plaintiff argues they do, therefore, Plaintiff's claims for violation of state law also are dismissed.

### III.     ORDERS

For the reasons discussed herein, it is hereby **ORDERED AND ADJUDGED** that:

1. All claims are dismissed except for Plaintiff's First Amendment retaliation claim against Defendants Reis and Suggs in their individual capacities.

2. If Plaintiff wishes to attempt to replead any of the claims asserted in his amended complaint but dismissed herein, he may file a second amended complaint on or before **May 6, 2025.** The court reminds Plaintiff that any such second amended complaint will completely replace the amended complaint. The court will not consider any allegations made in the amended complaint in evaluating any second amended complaint. Plaintiff must comply with the pleading rules and correct the deficiencies identified in this order. Failure to follow these instructions may result in the dismissal of this case.

3. If Plaintiff fails to file a second amended complaint within the time frame noted supra, this case will proceed on the single claim that survives this initial review.

4. Given the conclusions herein, and the passing of Plaintiff's mother, Plaintiff's motion for a preliminary injunction, ECF No. 15, which sought to prevent Defendants from continuing to deny contact visits, hereby is denied

as moot.

**IT IS SO ORDERED** at Hartford, Connecticut, this 7th day of March, 2025.

/s/
Omar A. Williams
United States District Judge